```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

MICHAEL COTE, et al.,         )
          Plaintiffs,         )
                              )
     v.                       )  C.A. No. 03-10716-DPW
                              )
ROBERT MURPHY and             )
MICHAEL T. MALONEY,           )
          Defendants.         )
```

## MEMORANDUM AND ORDER

For the reasons stated below, plaintiffs' motion to stay a decision on the motion to dismiss is denied; the defendants' motion to dismiss is granted; and the twelve motions to intervene are denied.

## BACKGROUND

This action was commenced in April 2003 by Michael Cote, Michael Austin, Thomas Kenney, and Donald Beeso, civilly-committed residents of the Massachusetts Treatment Center who have been adjudicated to be "sexually dangerous persons" under Massachusetts law.  Plaintiffs challenge the practice of "double-bunking" residents at the Center as being contrary to the Center's Management Plan and as violating their constitutional rights under the Fourteenth Amendment.  Amended Compl. ¶¶ 1, 14-22; Prayer for Relief.

The allegations of the Amended Complaint[1] fall against the

---

[1]On June 19, 2003, plaintiffs moved to amend their complaint by adding factual allegations concerning a document titled Standards for Adult Correctional Institutions, see Docket No. 5, and I granted that

backdrop of prior decades-long litigation in this Court concerning the Center and its management. See King, et al. v. Greenblatt, et al., Nos. 72-788-ADM and 72-571-ADM. The consent decrees entered by the Court as a result of this litigation initially provided for the Center to be administered jointly by the Departments of Mental Health and Correction; legislation enacted by the Massachusetts legislature in 1993 eventually transferred administrative responsibility for the Center solely to the Department of Correction. King v. Greenblatt, 53 F. Supp. 2d 117, 121-122 (D. Mass. 1999). As part of the King litigation, this Court requested that the DOC provide a plan describing how it proposed to operate the Center, and this Court subsequently modified the consent decrees and accepted a version of this Management Plan in October 1996. Id. at p. 122 (citing King v. Greenblatt, No. 72-788, slip. op. (D. Mass. Oct. 31, 1996)). An updated, amended plan was filed in November 1996, and is considered, along with policies and procedures implemented pursuant to it, to be the "governing documents" for the Center. Id.  The decrees were terminated in June 1999. Id. at 138.

The defendants have filed a motion to dismiss the

---

motion. See Docket No. 17.

complaint on the grounds that (1) plaintiffs have failed to allege the deprivation of any constitutional right; (2) that the defendants have Eleventh Amendment immunity in their official capacities for any claims for monetary damages; (3) that they are entitled to qualified immunity; and (4) that plaintiffs' claims are barred by the doctrine of res judicata. Motion to Dismiss, p. 6-19.

I.  The Motion to Stay Decision

As a preliminary matter, I must address plaintiffs' motion requesting that this Court defer ruling on defendants' motion to dismiss until a determination is made on their motion to certify a class.  Docket No. 36.  I deny this motion as moot because I have previously denied plaintiffs' motions for class certification, albeit without prejudice, and there currently is no pending motion for class certification.  See Docket Nos. 18, 26.[2]

---

[2] I note, simply in passing, that although plaintiffs assert that they are "representing issues" that pertain to all residents at the Center, this assertion is without merit.  As non-attorney, pro se plaintiffs, they each are asserting only their own claims in this Court and do not represent or bring the claims of any other party. Feliciano v. DuBois, 846 F. Supp. 1033, 1039 (D. Mass. 1994) ("an individual who is not an attorney admitted to practice in this court cannot be allowed to represent any other person, any class, or other legal entity."); L.R. 83.5.3(c) ("A person who is not a member of the bar of this court. . . . will be allowed to appear and practice before the court only in his own behalf."); Caputo v. Fauver, 800 F. Supp. 168, 170 (D. N.J. 1992)(citations omitted) (pro se prisoner litigants cannot "fairly and adequately" represent the interests of

II.   The Standard of Review for A Motion to Dismiss

Plaintiffs' pro se complaint is entitled to a liberal construction.  See Haines v. Kerner, 404 U.S. 519, 520-521 (1972); accord Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed only if it appears beyond any doubt that the plaintiff can prove no set of facts which would support a claim entitling him or her to relief.  Conley v. Gibson, 355 U.S. 1, 45-56 (1957).  I must accept as true the well-pleaded factual averments contained in the complaint and draw all reasonable inferences from the allegations in favor of the plaintiffS.  Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); cf. Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66-67 (1st Cir. 2004) (no heightened pleading standard for civil rights cases).

III.   Eleventh Amendment Immunity

Defendants assert that they are entitled to Eleventh Amendment immunity from suit in their official capacities to the extent that plaintiffs are seeking money damages.  Motion to Dismiss, p. 9-10.  Because the Eleventh Amendment clearly bars plaintiff's monetary claims against defendants in their

---

fellow inmates in a class action).

official capacities, I grant defendants' motion, leaving plaintiffs' claims against defendants in their individual capacities.  Alabama v. Pugh, 438 U.S. 781, 781 (1978) (per curiam) (11th Amendment[3] generally is recognized as a bar to suits against a State, its departments and agencies unless the State has consented to suit); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102, n. 11 (1984) (citations omitted) (11th Amendment confers immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury ..., or interfere with the public administration...."  ; accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his or her official capacity is not a suit against the official but

---

[3]The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XIV.

rather is a suit against the official's office).[4]

IV.  The Fourteenth Amendment Claims

Plaintiffs' complaint, as amended, challenges the practice of "double-bunking" at the Center under the Due Process and Equal Protection clauses of the Fourteenth Amendment.[5]  I construe this claims as being brought pursuant to Section 1983.

In order to state a Section 1983 claim, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992).[6]

---

[4] Cf. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-144 (1993) (11th Amendment operates as a withdrawal of jurisdiction); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (stating that there has been no unequivocal abrogation of the Commonwealth's Eleventh Amendment immunity).

[5] Plaintiff Cote filed a motion to voluntarily withdraw the Equal Protection claims in January 2003.  Docket No. 25.  I denied that motion because although the motion was purportedly submitted on behalf of all the plaintiffs, it was signed only by Cote, a non-attorney who could not represent the other plaintiffs.  See Docket No. 28.

[6] I do not construe plaintiffs' claims that the Management Plan prohibits double-bunking as stating a claim pursuant to Section 1983. The Management Plan, which was a by-product of the consent decrees, sets a "higher standard than the Constitution" for the treatment of

A.  <u>The Due Process Clause</u>

The constitutional claims of persons civilly-committed as "sexually dangerous persons" such as plaintiffs are governed by the Due Process clause of the Fourteenth Amendment.  See <u>Selig v. Young</u>, 531 U.S. 250, 265 (2001) (applying due process clause to civilly-committed, "sexually violent" persons); <u>cf.</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979) (constitutionality of conditions or restrictions of pretrial detention implicate the due process of clause, proper inquiry is whether those conditions amount to punishment of the detainee).[7]  Persons who are civilly-committed involuntarily have a due process right to safe conditions of confinement.  See <u>Youngberg v.</u>

---

residents at the Center.  See <u>Cameron v. Tomes</u>, 990 F.2d 14, 19 (1st Cir. 1993) (citation omitted).  Thus, plaintiffs' claim that the Management Plan has been violated is a state-law based claim not enforceable under Section 1983.  See <u>Martinez v. Colon</u>, 54 F.3d 980, 989 (1st Cir. 1995) (stating that "It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim."); <u>accord</u> <u>Roy v. Augusta</u>, 712 F.2d 1517, 1522 (1st Cir. 1983) ("Mere violations of state law do not, of course, create constitutional claims").

[7] In their Opposition to the Motion to Dismiss, plaintiffs refer to cases involving Eighth Amendment claims.  That amendment is not directly applicable here because plaintiffs are not presently in custody pursuant to a criminal conviction.  <u>See, e.g.</u>, <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244 (1983) (citations omitted) (Due Process clause applied to pre-trial detainee's medical care claims; Eighth Amendment applies only after the State has secured a formal adjudication of guilt in accordance with due process of law).

7

Romero, 457 U.S. 307, 315-316 (1982).

Due Process also requires that the conditions and duration of confinement for civilly-committed "sexually dangerous persons" bear some reasonable relation to the purposes for which such persons are committed. Selig, 531 U.S. at 265; accord Youngberg v. Romeo, 457 U.S. 307, 324 (1982). Among the purposes of the commitment of sexually dangerous persons is their treatment, but also their confinement and custody as a means of protecting the public. See Selig, 531 U.S. at 261-262 (no federal constitutional bar to civil commitment of "untreatable" sexually violent predators; State has an interest in protecting the public from dangerous individuals with treatable as well as untreatable conditions); cf. King v. Greenblatt, 53 F. Supp. 2d 117, 121 (D. Mass. 1999) (transfer of administrative responsibility of Center solely to DOC was a recognition that one of the purposes of civil commitment of sexually dangerous persons was custody). Applying these standards, it is clear that "double-bunking," in and of itself, is not a per se constitutional violation. See Doe v. Gaughan, 808 F.2d 871, 885 (1st Cir. 1986) (overcrowding, without more, does not constitute a constitutional violation).

Plaintiffs' conclusory assertion that double-bunking will

8

cause them "harm" is insufficient.  Compl. ¶ 20 ("Forcing resident's [sic] adjudicated as being SDP's to be double-bunked in the same room puts the plaintiff's [sic] in harms [sic] way.").[8]  Although double-bunking may be inconvenient and, at times, uncomfortable, these effects, without more, do not cause this practice to rise to the level of a constitutional claim.  <u>Bell</u>, 441 U.S. at 537-539 (that detention of pre-trial detainee interferes with detainee's ability to live comfortably does not convert conditions or restrictions of detention into "punishment").  Absent any factual allegation that demonstrates that double-bunking has or will cause these plaintiffs any sort of constitutionally-cognizable injury, their claims must be dismissed.  <u>Doe</u>, 808 F.2d at 885 (affirming dismissal); see <u>Bell</u>, 441 U.S. at 541 (there is no "one man, one cell" principle lurking in the Due Process Clause; Due Process Clause implicated only if detainees are confined in such a manner as to cause them to endure genuine privations and hardship over an extended period

---

[8]In their Opposition, plaintiffs argue that "double-bunking" increases the risk that residents at the Center may be sexually or physically assaulted. Opposition, p. 11-12.  Because no factual allegation supporting this assertion was made in the Complaint, I cannot consider it.  Even if I could consider it, I note that this allegation does not appear to be specific to plaintiffs, whose complaints about sharing a cell with another resident primarily focus on their concerns about their cellmate's snoring. Opposition, p. 15-16.

of time such that those conditions amount to punishment).

    B.  <u>The Equal Protection Claims</u>

The gravamen of plaintiffs' Equal Protection claims was that they, as newly-committed residents, were being treated differently than residents committed prior to 1990 because they were being double-bunked and the pre-1990 residents were not. Compl. ¶¶ 14-20. As discussed above, plaintiff Cote previously attempted to withdraw these claims because he had learned that the pre-1990 committed residents were also being double-bunked. <u>See</u> Docket No. 25. The Opposition contains no arguments about plaintiffs' Equal Protection claims.

Assuming that plaintiffs have not abandoned this theory of liability, I find that the complaint fails to state a claim for relief. Pursuant to the Equal Protection Clause, similarly-situated persons should be accorded similar governmental treatment. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439-40 (1985). Thus, in order to establish an Equal Protection claim, a party must allege facts indicating that, compared with others similarly-situated, the party was selectively treated based on impermissable considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. <u>Barrington Cove Ltd. Partnership v. Rhode Island Hous. & Mort. Fin. Corp.</u>, 246 F.3d 1, 7

(1st Cir. 2001) (citation omitted).

Plaintiffs' Equal Protection claims are subject to dismissal because they fail to allege that any purported unequal treatment (presumably, that they are being double-bunked whereas pre-1990 commits are not) is based on any constitutionally impermissible reason. Judge v. City of Lowell, 160 F.3d 67, 74 (1st Cir. 1998) (in order to state a claim under the Equal Protection clause, a plaintiff must allege not only that the defendants were aware of her race at the time of their actions but also that defendants acted because of her race); accord Barrington Cove Ltd., 246 F.3d at 7-8; cf. Gilbert v. City of Cambridge, 932 F.2d 51, 66 (1st Cir. 1991) (where no fundamental right is at issue, state must only have a rationally-related reason for distinction).

V.  Qualified Immunity

Because I have determined that plaintiffs have failed to state a claim for relief for their Section 1983 claims, it is unnecessary for me to consider defendants' arguments that they are entitled to qualified immunity. See, e.g., Wilson v. Layne, 526 U.S. 603, 609 (1999) (before evaluating a qualified immunity defense, court first must determine (i) whether the plaintiff has alleged a deprivation of a constitutional or federal right by the defendant official and (ii) whether that right was clearly established at the time of the [official's] alleged violation");

accord Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (same); Saucier v. Katz, 533 U.S. 194, 201 (2001) (stating that "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

VI.   Res Judicata

Because I am dismissing plaintiffs' claims for the reasons stated above, I decline to consider defendants' arguments that plaintiffs' claims are barred by the doctrine of res judicata.

VII.   Plaintiffs' State-Law Based Claims

To the extent that plaintiffs' complaint, as amended, may be construed as bringing any state-law based claims, including their claims that the Management Plan has been violated, those claims are dismissed without prejudice.[9]

A district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims under which it has original jurisdiction. 28 U.S.C. § 1367(c); Gonzalez-De Blasnini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004). Thus, as a general rule, the unfavorable disposition of a plaintiff's federal

---

[9] In their Opposition to the Motion to Dismiss, plaintiffs argue, rather confusingly, that they are not subject to the Management Plan because they were committed to the Center after it was implemented; yet they also argue that the Plan has been violated and its protocols should be applied to them. Opposition, p. 8-16.

claims at the early stages of a suit will trigger the dismissal without prejudice of any supplemental state law claims.  Id. (citing Rodrqiuez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)).

Because I am dismissing all of plaintiffs' federal-based claims, I decline to exercise supplemental jurisdiction over any state-law based claims that they may be asserting and will dismiss them without prejudice.  Id.  This dismissal does not implicate an immediate time bar to filing any state-law based claims in state court.  See Mass. Gen. Laws ch. 260, § 32 (claims dismissed for "any matter of form" may be re-filed in state court for one year after their dismissal); Duca v. Martins, 941 F. Supp. 1281, 1295 n. 14 (D. Mass. 1996) (dismissing state law claim without prejudice after dismissing federal claims because § 32 gave plaintiff one year in which to re-file his claim in state court); Liberace v. Conway, 574 N.E.2d 1010, 1012, 31 Mass. App. Ct. 40, 42-44 (1991) (Mass. Gen. Laws ch. 260 § 32 applies to state law claims dismissed by federal court declining to exercise supplemental jurisdiction).

VIII.   The Motions to Intervene

The dismissal of plaintiffs' federal claims in this action moots the twelve pending motions to intervene filed by other residents of the Center, and thus, I deny each of those motions.

13

CONCLUSION

ACCORDINGLY, for the reasons stated above,

(1) Plaintiffs' Motion to Stay Decision (Docket No. 36) is DENIED;

(2) Defendants' Motion to Dismiss (Docket Nos. 30-31) is GRANTED in part and plaintiffs' federal-law based claims are dismissed; and

(3) The Motions to Intervene (Docket Nos. 38-50) are DENIED.

SO ORDERED.

Dated at Boston, Massachusetts, this 27th day of September, 2004.

s/ Douglas P. Woodlock<br>
DOUGLAS P. WOODLOCK<br>
UNITED STATES DISTRICT JUDGE